IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS HOUSTON DIVISION

| | |
|---|---|
| CHEMBULK OCEAN TRANSPORT LLC and § <br> CHEMBULK TRADING II LLC § <br>     Plaintiffs, § <br> VS. § <br> § <br> VALERO MARKETING AND § <br> SUPPLY COMPANY § <br>     Defendant. § | C.A. NO. 4:20-CV-01024 <br> Admiralty 9(h) |

### DEFENDANT VALERO MARKETING AND SUPPLY COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND THIRD-PARTY COMPLAINT TENDERING TRAFIGURA TRADING LLC TO PLAINTIFF

Defendant / Third-Party Plaintiff Valero Marketing and Supply Company ("Valero"), through its attorneys, Blank Rome LLP, files this Answer and Affirmative Defenses to Plaintiffs Chembulk Ocean Transport LLC ("Chembulk Ocean") and Chembulk Trading II LLC ("Chembulk Trading") (together "Plaintiffs" or "Chembulk") First Amended Complaint (the "Complaint"), and concurrently, a Third-party Complaint against Third-Party Defendant Trafigura Trading LLC ("Trafigura") pursuant to Fed. R. Civ. P. 14(a)(3) and a tender of Trafigura directly to Chembulk pursuant to Fed. R. Civ. P. Rule 14(c). Valero respectfully avers upon information and belief as follows:

### FIRST AFFIRMATIVE DEFENSE

Chembulk's Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Valero incorporates by response herein the content of Paragraphs 1 through 37 in support of this affirmative defense. Further, Chembulk's allegations of fraud are not supported by any specific facts as to representations made, by whom,

1

to whom, when, or what was said, and fail to meet the pleading prerequisites of the Federal Rules. In the Contract of Sale's terms and conditions, Valero disclaimed all warranties, except those expressly set forth in the Contract. Consequently, no basis exists to recover for any implied warranties of merchantability or fitness for a particular purpose. Moreover, Valero is not a manufacturer of bunker fuel. Consequently, the products-liability allegations to that effect do not pertain.

## **ANSWER TO CHEMBULK'S FIRST AMENDED COMPLAINT**

Valero responds to each individual paragraph of Chembulk's Complaint upon information and belief as follows:

1. Valero admits the allegations in the first sentence of Paragraph 1. Valero admits that it is a Delaware corporation headquartered in Texas but denies the remainder of the allegations of Paragraph 1 for lack of information sufficient to justify a belief therein.

2. Valero admits the allegations of Paragraph 2.

3. Valero denies the allegations of Paragraph 3 for lack of information sufficient to justify a belief therein.

4. Valero admits the allegations in Paragraph 4 that it is a company organized and existing under the laws of Delaware and has a principal place of business at One Valero Way, San Antonio, Texas 78249, and that it may be served with process by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136.  However, Valero has agreed to waive service of process in this case.

5. Valero admits the allegations of Paragraph 5 that is a seller and supplier of marine fuel, and that its business is based in Texas. Except as admitted, denied.

141517.06516/123633534v.2

6. Valero denies the allegations of Paragraph 6 for lack of sufficient information to justify a belief therein. To the extent a response is required, denied.

7. Valero denies the allegations of Paragraph 7 for lack of sufficient information to justify a belief therein. To the extent a response is required, denied.

8. Valero denies the allegations of Paragraph 8.

9. Valero denies the allegations of Paragraph 9.

10. Valero denies the allegations of Paragraph 10.

11. Valero denies the allegations of Paragraph 11 for lack of sufficient information to justify a belief therein. To the extent a response is required, denied.

12. Valero denies the allegations of Paragraph 12.

13. Valero denies the allegations of Paragraph 13 for lack of sufficient information to justify a belief therein. To the extent a response is required, denied.

14. Valero admits the allegations of Paragraph 14 that on March 27, 2018, Valero delivered 350 metric tons of bunkers to the vessel CHEM RANGER (the "Vessel") via the Tug MISS MONIE and bunker barge B-252, which were contracted for and/or arranged by Valero for the delivery.

15. Valero denies the allegations of Paragraph 15 for lack of sufficient information to justify a belief therein but admits that Valero has been placed on notice of Vessel Interests' intention to recover all alleged damages claimed to have been sustained in connection with use of the bunker fuel aboard the Vessel. Valero has denied and continues to deny (with a full reservation of all rights and defenses) any responsibility or liability for the alleged damages claimed by the vessel or Chembulk. Except as admitted, denied.

16. In response to Paragraph 16 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

17. Valero admits the allegations of Paragraph 17 that it is engaged in the business of selling, marketing, transporting, and/or otherwise providing bunkers to ocean-going vessels such as the CHEM RANGER. Except as admitted, denied.

18. The allegations of Paragraph 18 state legal conclusions to which no response is required. To the extent a response is required, denied.

19. The allegations of Paragraph 19 state legal conclusions to which no response is required. To the extent a response is required, denied.

20. The allegations of Paragraph 20 state legal conclusions to which no response is required. To the extent a response is required, denied.

21. Valero denies the allegations of Paragraph 21.

22. In response to Paragraph 22 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

23. The allegations of Paragraph 23 state legal conclusions to which no response is required. To the extent a response is required, denied.

24. Valero denies the allegations of Paragraph 24.

25. Valero denies the allegations of Paragraph 25.

26. In response to Paragraph 26 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

27. Valero admits the allegations of Paragraph 27 that it was the seller of the marine fuel that was provided to the CHEM RANGER that is the subject of this Complaint. Except as admitted, denied.

141517.06516/123633534v.2

28. Valero denies the allegations of Paragraph 28.

29. Valero denies the allegations of Paragraph 29.

30. Valero denies the allegations of Paragraph 30.

31. In response to Paragraph 31 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

32. Valero denies the allegations of Paragraph 32.

33. Valero denies the allegations of Paragraph 33.

34. In response to Paragraph 34 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

35. Valero denies the allegations of Paragraph 35.

36. Valero denies the allegations of Paragraph 36.

37. Valero denies the allegations of Paragraph 37 and also the claim for damages contained within the un-numbered "prayer" paragraph following Paragraph 37.

## SECOND AFFIRMATIVE DEFENSE

Without waiving any other defenses, Valero denies that Chembulk is entitled to any relief against it, whether as prayed for or otherwise.  Additionally, Valero is entitled to limit its liability pursuant to the Contract of Sale's terms and conditions

## THIRD AFFIRMATIVE DEFENSE

Without waiving any other defenses, if Chembulk was damaged, which damages are not admitted but expressly denied, then such damages were caused by the sole negligence or other legal fault of Chembulk or third parties for whom Valero is not responsible.

**FOURTH AFFIRMATIVE DEFENSE**

Without waiving any other defenses, if Chembulk was damaged, which damages are not admitted but expressly denied, then the acts or omissions of third parties for whom Valero is not responsible were the legal, sole, proximate, intervening, superseding and/or new and independent cause of the damages alleged, if any.

**FIFTH AFFIRMATIVE DEFENSE**

Without waiving any other defenses, if Chembulk was damaged, which damages are not admitted but expressly denied, then such damages were caused by and/or arose as a result of the unseaworthiness and/or other defective conditions of the Vessel, in whole or in part, for which Valero is not responsible.

**SIXTH AFFIRMATIVE DEFENSE**

Without waiving any other defenses, if Chembulk was damaged, which damages are not admitted but expressly denied, then Chembulk has failed to mitigate its damages, and they should be barred or reduced accordingly.

**SEVENTH AFFIRMATIVE DEFENSE**

Without waiving any other defenses, Chembulk's damages are barred by release, contractual limitation, estoppel and/or waiver.

**EIGHTH AFFIRMATIVE DEFENSE**

Without waiving any other defenses, if Chembulk was damaged, which damages are not admitted but expressly denied, then such damages are barred by the doctrine of laches and/or all applicable statutes of limitations.

141517.06516/123633534v.2

## THIRD-PARTY COMPLAINT AND RULE 14(C) TENDER
## AGAINST TRAFIGURA TRADING LLC

Valero Marketing and Supply Company, now as Defendant/Third-Party Plaintiff, without waving any rights, defenses or affirmative defenses, brings the following Third-Party Complaint (the "Third-Party Complaint") and Fed. R. Civ. P. Rule 14(c) tender against Third-Party Defendant Trafigura alleges upon information and belief as follows:

### I.   Jurisdiction and Venue

**1.** This is a case of admiralty and maritime jurisdiction under 28 U.S.C. §1333 and an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h). Alternatively, this Court has diversity jurisdiction under 28 U.S.C. §1332(a).

**2.** Supplemental jurisdiction for this Third-Party Complaint also exists under 28 U.S.C. § 1367 because this Third-Party Complaint against Trafigura is so related to the claims asserted in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**3.** Venue is proper pursuant to 28 U.S.C. § 1391.

### II.   The Parties

**4.** Valero is a Delaware Company with its principal place of business in San Antonio, Texas.

**5.** Trafigura is upon information and belief a business entity with its principal place of business in Houston, Texas. Among other things, Trafigura was at all times relevant herein a manufacturer, as that term is defined under Texas Civil Practice & Remedies Code § 82.001(4), who placed certain products or component parts thereof into the stream of commerce as described below.

7

6. Chembulk Ocean and Chembulk Trading are upon information and belief Marshall Islands companies with their principal offices and places of business located at 175 Rennell Drive, Southport, Connecticut 06890.

7. The *M/T Chem Ranger* ("Vessel") is upon information and belief, a vessel owned, operated, or otherwise controlled by Chembulk Ocean and Chembulk Trading (collectively referred to as "Chembulk").

### III. Factual Background

8. Valero is, among other things, engaged in the business of selling and distributing marine bunker fuels.

9. In February and March 2018, Valero and Trafigura entered into three written contracts for the purchase of fuel oil to be sold by Trafigura and delivered to Valero at the Bostco Terminal in LaPorte, Texas.

#### A. Trafigura Contract #1

10. The first contract executed between the parties was for the purchase of approximately 90,000 barrels of fuel oil. Trafigura assigned a Contract No. 1654384 and Valero assigned a Contract No. 4200142538 to this transaction.

11. This first contract was executed in two parts by Trafigura. Specifically, there were two transfers, totaling approximately 90,233 barrels on February 23, 2018.

12. For these two transfers, Valero assigned an internal transfer No. 1888945.

13. Transfer #1 consisted of approximately 20,483 barrels and occurred when Trafigura transferred from their tank #200-8 into Valero Tank #50-7. Transfer #2 consisted of approximately 69,751 barrels and occurred when Trafigura transferred from their tank #200-8 into Valero tank #320-1.

14. Testing of this fuel oil received from Trafigura on February 23, 2018 revealed elevated amounts of 4-cumyl-phenol which Valero asserts contaminated the fuel oil and may have caused the engine fouling and damages experienced by the Vessel.

15. Specifically, testing of Transfer #1 revealed 4-cumyl-phenol levels of 1053 ppm. There was no testing of Transfer #2, but as noted in footnote 2, there was no series of Valero internal transfers which could have allowed fuel oil under Transfer #2 to reach the Vessel.

16. Upon information and belief, quantities of the fuel oil delivered under Trafigura Contract #1 were later transferred from Valero Tank 50-7 to other Valero Tanks within the BOSTCO Facility, eventually making its way to Buffalo Barge 252, which Valero uses to supply marine-bunker fuel pursuant to sales to third-party customers including Plaintiff.

17. Thereafter, the Vessel was stemmed from Buffalo Barge 252 on March 27, 2018.

**B. Trafigura Contract #2**

18. The second contract executed between the parties was for the purchase of approximately 90,000 barrels of fuel oil. Trafigura assigned a Contract No. 1659403 and Valero assigned a Contract No. 4200142637 to this transaction.

19. The second contract was executed in three parts by Trafigura. Specifically, there were three transfers, totaling approximately 94,925 barrels, from March 2-4, 2018.

20. For these three transfers, Valero assigned an internal transfer No. 1891658.

21. Transfer #1 occurred on March 2nd when Trafigura transferred approximately 38,536 barrels from their tanks #100-11 and #200-8 into Valero Tank #50-7. Transfer #2 occurred on March 3rd when Trafigura transferred approximately 1,505 barrels from their tanks #100-11 and #200-8 into Valero Tank #50-8. Transfer #3 occurred on March 4th, when Trafigura transferred approximately 54,883 barrels from their tanks #100-11 and #200-8 into Valero Tank #320-2.

22.     Testing of this fuel oil received from Trafigura on March 2-4, 2018 revealed elevated amounts of 4-cumyl-phenol which Valero asserts contaminated the fuel oil and may have caused the engine fouling and damages experienced by the Vessel.

23.     Specifically, testing from Transfer #1 from Tank #100-11 revealed 4-cumyl-phenol levels of 81.5 ppm.  Testing of Transfer #1 from Trafigura Tank #200-8 revealed 4-cumyl-phenol levels of 1179 ppm.

24.     Upon information and belief, quantities of the fuel oil delivered under Trafigura Contract #2 was later transferred from Valero Tanks 50-7, 50-8 and 320-2 to other Valero Tanks within the BOSTCO Facility, eventually making its way to Buffalo Barge 252, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

25.     Thereafter, the Vessel was stemmed from Buffalo Barge 252 on March 27, 2018.

C.  **Trafigura Contract #3**

26.     The third contract executed between the parties was for the purchase of approximately 2,500 barrels of fuel oil. Trafigura assigned a Contract No. 1669270 and Valero assigned a contract # 4200142771 to this transaction.

27.     This third contract was executed in one transfer of approximately 2,319 barrels on March 9, 2018 from Trafigura tank #50-4 to Valero Tank #320-3.

28.     For this transfer Valero assigned an internal transfer No. 1893575.

29.     Testing of this fuel oil received from Trafigura on March 9, 2018 revealed elevated amounts of 4-cumyl-phenol which Valero asserts contaminated the fuel oil and may have caused the engine fouling and damages experienced by the Vessel.

30.     Specifically, testing of this transfer revealed 4-cumyl-phenol levels of 54.2 ppm.

141517.06516/123633534v.2

31.     Upon information and belief, quantities of the fuel oil delivered under Trafigura Contract #3 was later transferred from Valero Receiving Tank 320-3 to other Valero Tanks within the BOSTCO Facility, eventually making its way to Buffalo Barge 252, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

32.     Thereafter, the Vessel was stemmed from Buffalo Barge 252 on March 27, 2018.

**D.  Valero – Chembulk Contract**

33.     On or about March 16, 2018, Valero entered into Valero Sales Contract Confirmation No. 40586957 (the "Valero – Chembulk Contract") with Chembulk for the sale of certain quantities of bunker fuel (the "Valero Bunker Fuel") to the Vessel.

34.     Upon information and belief, on or before March 27, 2018, one and/or more transfers of fuel oil from Trafigura had made their way through the various Valero tanks at the BOSTCO Facility to Buffalo Barge 252, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

35.     The Valero Bunker Fuel (which contained the Trafigura Fuel Oil) was delivered to the Vessel on or about March 27, 2018 in the Port of Houston, Texas by way of transfer from Buffalo Barge 252 to the Vessel.

36.     Chembulk has claimed in its First Amended Complaint at Paragraph 14 as follows:

> *On March 27, 2018, Valero delivered 350 metric tons of bunkers to the Chem Ranger via the Tug Miss Monie and bunker barge B-252, which were contracted for and/or arranged by Valero for the delivery.*

37.     Chembulk has further claimed in its First Amended Complaint at Paragraph 15 as follows:

> *On April 19, 2018, shortly after the Valero fuel was transferred for use on the Chem Ranger, the vessel's main engine ceased functioning. The resulting damage necessitated that the vessel be*

11

> *towed to the Bahamas for repairs. Charterer has been put on notice by vessel owner that it intends to recover all damages sustained to the vessel from charterer.*

38. Valero was without fault in causing and/or contributing to the damages asserted in Chembulk's First Amended Complaint. The contamination of the Valero Bunker Fuel was legally caused solely by the acts, omissions, or other conduct of Trafigura, or by its breaches of the applicable contracts with Valero and/or negligent acts or failures to act. The source of all damages, costs, and expenses incurred by Chembulk is Trafigura's provision of unsuitable, substandard, defective, contaminated, unfit, nonconforming, and/or off-specification product, *i.e.*, the Trafigura Fuel Oil.

39. **Rule 14(c) Tender of Third-Party Defendant to Plaintiff**

Valero invokes the provisions of Fed. R. Civ. P. 14(c) and tenders Trafigura as a direct defendant to Plaintiff Chembulk because Trafigura is wholly liable to Chembulk for remedy over, contribution or otherwise on account of the same transaction and occurrence or series of transactions and occurrences in this matter. Valero accordingly demands judgment in Plaintiff Chembulk's favor against Trafigura. Pursuant to Rule 14(c)(1-2), Trafigura must respond to the Complaint of Chembulk and defend against Chembulk's claims, and this action shall proceed as if Chembulk had sued Trafigura directly.

## **PRAYER**

**WHEREFORE**, the premises considered, Valero Marketing and Supply Company requests that the Court enter an order or judgment finding:

(1) ***On Valero's Answer to Chembulk's First Amended Complaint***: That Valero's Answer to Chembulk's First Amended Complaint be deemed good and sufficient and, that after due proceedings be had, there be judgment in favor of Valero dismissing Chembulk's

claim, at Chembulk's cost, and that Valero be granted such other and further relief as equity and justice of the cause may require and permit.

**(2) *<ins>On Valero's Third-Party Complaint Against Trafigura</ins>*:** That Trafigura be obligated to answer Chembulk's First Amended Complaint pursuant to Rule 14(c) and that judgment be entered in favor of Chembulk against Trafigura in an amount to be determined at trial, plus pre-judgment interest, costs and fees, and for such other and further relief as equity and justice of the cause may require and permit.

Houston, Texas

August 13, 2020

Respectfully submitted,

BLANK ROME LLP

*/s/ Keith B. Letourneau*
Keith B. Letourneau (Attorney-in-charge)
State Bar No. 00795893
Federal I.D. No. 20041
Jeremy A. Herschaft
State Bar No. 24091970
Federal I.D. No. 1450990
Zachary J. Wyatte
State Bar No. 24110556
Federal I.D. No. 3350752
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: (713) 228-6601
Facsimile:  (713) 228-6605
kletourneau@blankrome.com
jherschaft@blankrome.com
zwyatte@blankrome.com

*Attorneys for Valero Marketing and Supply Company*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of August, 2020, I caused the foregoing to be electronically filed with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Keith B. Letourneau*
Keith B. Letourneau
